THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:17-cv-00689-MR

| | |
|---|---|
| TERRY ANDERSON MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I. PROCEDURAL HISTORY

The Plaintiff, Terry Anderson Massey ("Plaintiff"), filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act, alleging an onset date of June 1, 2014. [Transcript ("T.") at 179]. The Plaintiff's applications were denied initially and upon reconsideration. [T. at 55, 63, 91-92]. Upon Plaintiff's request, a hearing was held on June 28, 2017 before an Administrative Law Judge ("ALJ"). [T. at 32-54]. On July 7, 2017, the ALJ

issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date June 1, 2014. [T. at 8-26]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla

of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III.  THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability.

3

20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular

4

and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. [T. at 13]. The ALJ then found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date, June 1, 2014. [Id.]. At step two, the ALJ found that the Plaintiff has severe impairments including "Diabetes, type II, obesity, degenerative joint disease, and arthritis of the left knee." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [T. at 16]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform **light work** as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry, push and pull 20 pounds occasionally, and 10 pounds frequently. With normal breaks in an eight-hour day**, he can sit for six hours, and stand and/or walk for six hours**; can occasionally climb ladders, ropes, scaffolds, ramps and stairs; can occasionally balance; **can frequently stoop, kneel, crouch, and crawl**; and can tolerate occasional exposure to hazards.

[T. at 16] (emphasis added).

At step four, the ALJ identified Plaintiff's past relevant work as a shuttle bus driver. [T. at 19]. The ALJ observed, however, that the Plaintiff is "unable to perform his past relevant work as actually or generally performed."

6

[Id.]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including fast food worker, housekeeper/cleaner, and hand packager. [T. at 20]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from June 1, 2014 the alleged onset date, through July 12, 2017, the date of the ALJ's decision. [T. at 21].

## V. DISCUSSION[1]

### A. Motion for Summary Judgment

In this appeal, the Plaintiff sets out two assignments of error. First, the Plaintiff asserts that the ALJ erred in finding that the Plaintiff has the RFC to perform light work. [Doc. 13 at 4]. Second, Plaintiff assigns error to the ALJ's credibility assessments. [Id. at 4, 8-9].[2] The Defendant, on the other hand,

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

[2] The Court notes that to the extent that Plaintiff attempts to weave any other disparate legal arguments or errors into his assignments of error, the Court disregards those arguments. [See Doc. 13]. Such arguments must be set forth in separate assignments of error to be considered by this Court. See e.g. Gouge v. Berryhill, No. 1:16-cv-00076-MR, 2017 WL 3981146, at *2 (W.D.N.C. Sept. 11, 2017) (Reidinger, J.) (collecting cases). The Court instructs counsel for Plaintiff to separately set forth each alleged error both so that the Court may consider them and to aid counsel in analyzing the proper framework and legal bases for these arguments.

7

asserts that the ALJ's decision was supported by substantial evidence and reached through the application of the correct legal standards. [Doc. 15 at 4-13]. The Court turns to the Plaintiff's first assignment of error.

Social Security Ruling 96-8p[3] explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[4] SSR 96-8p. The Ruling further provides that the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." Id. (emphasis added). In Mascio, the Fourth Circuit found an ALJ's failure to follow these procedures required remand, as it left the Court with a record lacking the evidence necessary for

---

[3] The Ruling's title is "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims."

[4] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; (3) other work-related abilities affected by impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

meaningful review. 780 F.3d at 636-7. A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Id. at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

In the RFC assessment in this case, the ALJ found the Plaintiff can perform "light work" and "can sit for six hours, and stand and/or walk for six hours," as well as additional limitations such as being able to "frequently stoop, kneel, crouch, and crawl." [T. at 16]. The ALJ's decision, however, contains no function-by-function assessment of these activities, as required in SSR 96-8p and under Mascio. After setting out a bare assessment of the Plaintiff's RFC, the ALJ recites certain medical and non-medical evidence

regarding the Plaintiff's diabetes before addressing the Plaintiff's obesity as follows:

> As for obesity, by March 2015, the claimant's BMI was 43.4 (Exhibit 5F/17). In September 2016, Dr. Clark noted a fifteen-pound weight gain over the previous six months. The claimant reported he was unable to ambulate far distances because of knee pain (Exhibit 9F/16). However, in May 2017, BMI was 47.74 (Exhibit 14F/15). As indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule.

[T. 18]. Despite having acknowledged that obesity may have a greater affect on someone with arthritis in a weight-bearing joint, the ALJ does not explain what impact, if any, the Plaintiff's obesity has *in this particular case*. Rather, the ALJ simply concludes that "[t]hese considerations have been taken into account in reaching the conclusions herein." [Id.]. The ALJ fails, however, to explain what conclusions were reached, or how, based on the impact of Plaintiff's obesity, as required by the Regulations. See SSR 02-01p ("As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.").

The ALJ then proceeds to address the Plaintiff's knees as follows:

> The claimant testified that severe arthritis in his knees is his worst impairment. He said he had surgery on the left knee in 2002; yet, his knees worsened. He said he has had injections in his knees and it helped the right knee but not the left knee. He stated that Meloxicam was prescribed for pain. He testified that his knee problems are treated by Dr. Clark at CMC. The claimant stated that despite losing forty pounds, he continues to have swelling in his legs when standing or sitting and elevation for "a couple of hours" helps reduce the swelling. Dr. Clark assessed that the claimant likely had underlying degenerative joint disease made worse over time by morbid obesity. He was referred for a knee injection (Exhibit 9F/16). In March 2015, Dr. Clark reported that physical examination was within normal limits (Exhibit 5F/28). On examination in October 2015, Dr. Clark indicated that the claimant reported knee pain but physical examination was essentially normal for gait, station, range of motion, and strength (Exhibit 5F/100). Based on an x-ray from September 23, 2016, the claimant had moderate tri-compartmental degenerative joint disease of the left knee (Exhibits 9F/18 and 14F/10). In December 2016, the claimant reported he was walking for exercise on a regular basis and had realized a fifteen-pound weight loss. He complained of continued pain and reported he could not afford the knee injection. He indicated that the pain was worse of the morning but improved to five on a scale of one to ten as the day progressed (Exhibit 10F/6). In March 2017, he was evaluated for fall risk and it was noted there was no history of falls in the previous three months, gait was not weak or impaired, and he used no ambulatory aid (Exhibit 11F/63). In May 2017, he received bilateral knee injections (Exhibit 14F/12).

[T. at 18]. The ALJ does not provide any further discussion or explanation as to how he considered the Plaintiff's degenerative joint disease or arthritis of the left knee in the RFC assessment. Instead, the ALJ proceeds to a new paragraph indicating that the side effects of Plaintiff's medications do not interfere with the jobs identified by the VE, before discussing the effectiveness of Plaintiff's treatment as follows:

> As to effectiveness of treatment, although the claimant has received various forms of treatment for the allegedly disabling symptoms, the record also reveals that the treatment has been generally successful in controlling those symptoms when he is compliant. Although the claimant alleged disability beginning June 1, 2014, there are no medical treatment notes after March 28, 2013, and prior to February 27, 2015 (Exhibit 3F).

[T. at 18].[5] The ALJ then proceeds to the opinion evidence as follows:

> I assign some weight to the reconsideration findings (Exhibits 5A and 6A). The State agency consultants did not see Exhibits 3F to 14F, with there being continued complaints regarding the left knee and diagnoses of arthritis and degenerative joint disease of the left knee. As such, out of an abundance of caution and treating the claimant's claims in the most

---

[5] The ALJ's statements in this regard are puzzling. First, without any specificity, the ALJ states that treatment has been generally successful in controlling all the Plaintiff's symptoms. However, in discussing the Plaintiff's knees, the ALJ specifically noted that Plaintiff indicated that injections in his knees "helped the right knee but not the left knee." [T. at 18]. Second, the ALJ indicates that when the Plaintiff is compliant with treatment his symptoms are successfully controlled but that there are no medical treatment notes for the span of almost two years, thereby implying Plaintiff's non-compliance with treatment. [Id.] However, the ALJ also noted that the Plaintiff indicated he could not afford knee injections. [Id.]

12

> favorable light, I reduced the exertional level from medium to light. This is consistent with the claimant's own testimony that he could lift and carry up to twenty pounds.

[T. 19]. The ALJ's explanation, however, is sorely lacking in the analysis needed for meaningful review. Foremost, the records not reviewed by the State Agency consultants make up the vast majority of the Plaintiff's medical records. [Compare T. at 272-284 with T. at 291-759]. While the ALJ reduces the Plaintiff's exertional level from "medium" to "light" as consistent with the Plaintiff's testimony of being able to lift twenty pounds, the ALJ adopts all of the State Agency consultants' other recommended RFC limitations without change. [Compare T. at 16 with T at 78-79, 87-88]. Further, the ALJ does not explain how he concluded that the Plaintiff can actually perform the other tasks required by "light work" and the Plaintiff's RFC, such as being able to "sit for six hours, and stand and/or walk for six hours," or "frequently stoop, kneel, crouch, and crawl." [T. at 16].

The ALJ fails to explain how the recited evidence and the reduction of Plaintiff's exertional level to "light work" supports his conclusions regarding the limitations contained in his RFC assessment, particularly that the Plaintiff can "sit for six hours, and stand and/or walk for six hours" and "frequently stoop, kneel, crouch, and crawl." [T. at 16]. Further, the lack of explanation is compounded by the ALJ adopting the State Agency consultants

13

recommended limitations without any explanation. [T. at 18]. The ALJ summarizes the evidence of record and concludes the Plaintiff can perform "light work," particularly that the Plaintiff is able to "sit for six hours, and stand and/or walk for six hours" and "frequently stoop, kneel, crouch, and crawl." [T. at 16]. However, the ALJ never explains how he concluded — *based on this evidence* — that the Plaintiff could actually perform the tasks required of light work or the additional physical limitations in the RFC. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [Plaintiff] could perform "medium work" and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded — *based on this evidence* — that [Plaintiff] could actually perform the tasks required by "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours."). Therefore, the ALJ failed to build an "accurate and logical bridge" from the recited evidence to the RFC conclusions.

While the ALJ's ultimate conclusions as to Plaintiff's limitations may be correct, the Court is left to guess regarding how they were reached. Under these circumstances, the Court cannot affirm the ALJ's finding of no disability without a showing of substantial evidence to support his findings at each step of the sequential evaluation process. Mascio, 780 F.3d at 637.

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's exertional and non-exertional limitations, narratively discussing all of the relevant evidence, and specifically explaining how he reconciled that evidence (both supportive and contradictory) to his conclusions.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 27, 2019

Martin Reidinger
United States District Judge